2017 ND 92

Steve P. GOODALL, Robert L. Goodall, Anne M. Stout, Joanne M. Quale, and Darrel Quale, Plaintiffs and Appellees

v.

Charles W.H. MONSON, LeeAnn Tarter, KayCee Williams, Defendants and Appellants

and

Enerplus Resources (USA) Corporation, and Northern Oil and Gas, Inc., Defendants

No. 20160235

Supreme Court of North Dakota.

Filed 4/25/2017

Jon Bogner, P.O. Box 1173, Dickinson, ND 58602–1173, for plaintiffs and appellees.

Megan J. Lindquist, P.O. Box 2056, Bismarck, ND 58502–2056, for defendants and appellants.

McEvers, Justice.

[¶ 1] Charles W.H. Monson, LeeAnn Tarter, and KayCee Williams ("the Monsons") appeal a district court judgment reforming a deed executed in 1980 and quieting title in favor of Steve P. Goodall, Robert L. Goodall, Anne M. Stout, Joanne M. Quale, and Darrel Quale ("the Goodalls"). We conclude the district court did not err in admitting extrinsic evidence to support the Goodalls' argument that a mutual mistake had been made, and the district court's findings supporting reformation of the deed are not clearly erroneous. We affirm.

I

[¶ 2] This case involves the sale of mineral rights to four tracts of land ("the subject property") executed in one deed. In 1980, George and Dorothy Hoffman executed a deed transferring an undivided 508.26/876.26 mineral interest to Francis and Alice Goodall. The deed was recorded in McKenzie County. Approximately two weeks prior to the date of the deed the parties signed a document titled "Contract and Receipt," but it was not recorded with the deed. The Goodalls are successors in interest to Francis and Alice Goodall. The Monsons are the successors in interest to the Hoffmans. All individuals who were a party to or present when the deed was signed were deceased prior to commencement of this action.

[¶ 3] It is not disputed that prior to the 1980 deed George and Dorothy Hoffman owned the following mineral interests in four separate tracts of land:

154.06 mineral acres in Tract 1: Township 152 North—Range 93 West[,] Section 19: E1/2SW1/4, Lots 3, 4, SE1/4 (containing 308.06 acres)

150 mineral acres in Tract 2: Township 152 North—Range 93 West[,] Section 20: SW1/4, W1/2NW1/4SE1/4 (containing 180 acres).

124.20 mineral acres in Tract 3: Township 152 North—Range 93

West[,] Section 30: Lots 1, 2, E1/2NW1/4, NE1/4 (containing 308.20 acres).

80 mineral acres in Tract 4: Township 152 North—Range 93 West[,] Section 30: N1/2SE1/4 (containing 80 acres).

Neither party disputes the accuracy of this description of the subject property. Both parties agree at one time the Hoffmans owned 100 percent of the mineral interests beneath the subject property. The Hoffmans executed eight separate deeds conveying mineral acres beneath the subject property to various parties between 1955 and 1965. Subsequent to the execution of these deeds, the Hoffmans retained a total of 508.26 mineral acres out of 876.26 total acres in the subject property. On June 2, 1980, the Hoffmans executed a mineral deed transferring an undivided 508.26/876.26 mineral interest below the subject property to the Goodalls. This fractional interest language in the 1980 deed is at the center of this dispute.

[¶ 4] Dorothy Hoffman died in 1985. George Hoffman died intestate in 1998. The Monsons acquired by intestate succession any mineral interests the Hoffmans retained beneath the subject property. Sometime after George Hoffman's death, members of the Monson family entered into oil and gas lease agreements with Enerplus Resources and Northern Oil and Gas, Inc.

[¶ 5] On July 1, 2013, the Goodall's filed a complaint requesting the district court quiet title in their favor. While the Goodalls named the oil companies as defendants in their complaint, neither oil company is a party to this appeal. On December 30, 2013, the Monsons moved for summary judgment. They argued the 1980 deed was unambiguous, the Hoffmans only transferred a fractional interest to the Goodalls, and the Monsons inherited their interests

from what the Hoffmans retained in the transaction. The Goodalls claimed the deed did not reflect the parties' intentions, which was to transfer all of the Hoffmans' 508.26 mineral acres to Francis and Alice Goodall. After a hearing on April 14, 2014, the district court denied the Monsons' motion for summary judgment.

[¶ 6] On November 9, 2015, a bench trial was held in McKenzie County. At trial, the Goodalls offered the eight previous mineral deeds and the contract and receipt as evidence of ambiguity and to show the parties' intent at the time the deed was executed. The district court admitted the contract and receipt over the Monsons' objection. After both parties submitted post-trial briefs, the district court issued its findings of fact, conclusions of law, and order for judgment in April 2016. The district court found "[t]he Goodall Deed while being unambiguous on its face is latently ambiguous when it is read with the entire title chain, and extrinsic evidence is allowed to explain the parties' intent." The district court used the contract and receipt to determine the parties intended for the Hoffmans to transfer their entire interest to the Goodalls through the 1980 deed. The district court found the deed did not reflect the true intentions of the parties, the Monsons were not good-faith purchasers and concluded that, as a result of mutual mistake, the deed did not express the true intent of the parties. The district court reformed the deed, quieted title in favor of the Goodalls, and entered judgment on April 19, 2016. The Monsons appealed.

II

[¶ 7] The Monsons argue the language of the deed unambiguously transferred an undivided 508.26/876.26 mineral interest to the Goodalls, the Hoffmans retained any remaining mineral interests in

the subject property, and the Monsons inherited this retained interest. The rule for interpreting the language of a deed is well established:

> The primary purpose in construing a deed is to ascertain and effectuate the grantor's intent. However, deeds that convey mineral interests are subject to general rules governing contract interpretation, and we construe contracts to give effect to the parties' mutual intentions. When the language of a deed is plain and unambiguous and the parties' intentions can be ascertained from the writing alone, extrinsic evidence is inadmissible to alter, vary, explain, or change the deed. If a contract is ambiguous, extrinsic evidence may be considered to clarify the parties' intentions. A contract is ambiguous when rational arguments can be made for different interpretations. Whether a contract is ambiguous is a question of law for the court to decide. On appeal, we independently review a contract to determine if it is ambiguous.

Nichols v. Goughnour, 2012 ND 178, ¶ 12, 820 N.W.2d 740 (citations omitted) (quotation marks omitted).

▮ [¶ 8] The Goodalls argue the Hoffmans intended to convey their entire mineral interest in the subject property, which was 508.26 out of 876.26 total mineral acres. However, the 1980 deed transferred "an undivided 508.26/876.26 interest in and to all of the oil, gas, casinghead gas, casinghead gasoline, all liquid hydrocarbons, clay, gravel, coal, uranium, and other minerals" under the subject property. The Goodalls argue if an undivided 508.26/876.26 fractional interest is applied to the four tracts of land at issue, it would create underconveyances in tracts one and three, and overconveyances in tracts two and four. They argue looking at the past deeds along with these underconveyances

and overconveyances creates a latent ambiguity.

▮ [¶ 9] While extrinsic evidence is generally not allowed when the language of a deed is unambiguous, this Court noted a latent ambiguity "may, in limited circumstances, be explained by extrinsic evidence." Gawryluk v. Poynter, 2002 ND 205, ¶ 10, 654 N.W.2d 400 (citing Harney v. Wirtz, 30 N.D. 292, 152 N.W. 803, 807–08 (1915)). "A latent ambiguity is an uncertainty which does not appear on the face of the deed, but which is shown to exist for the first time by matter outside the writing when an attempt is made to apply the language to the ground." 26A C.J.S. Deeds § 264 (2011). A latent ambiguity is one "arising when a writing appears unambiguous on its face, but some collateral matter makes the meaning uncertain." Gawryluk, 2002 ND 205, ¶ 10, 654 N.W.2d 400 (citing Harney, 152 N.W. at 807–08). This Court first explained the purpose of allowing extrinsic evidence to explain a latent ambiguity in Harney:

> [W]hile parol evidence may be admitted in explanation where there is a latent ambiguity, it can do no more than explain the doubtful expressions of the instrument consistently with the relations of the parties and the other incidents of the contract. The rule that where an ambiguity is created by parol it may be removed by parol was never intended to violate the rule that a writing shall not be contradicted or explained by inferior testimony.

Id. at 807–08 (citations omitted) (emphasis in original). "[P]arol evidence may be used to explain a latent ambiguity, but may not be used to create a new or a different contract." Gawryluk, at ¶ 10. "When the language of a deed is plain and unambiguous and the parties' intentions can be ascertained from the writing alone, extrinsic evidence is inadmissible to alter, vary, ex-

plain, or change the deed." Nichols, 2012 ND 178, ¶ 12, 820 N.W.2d 740 (citations omitted) (quotation marks omitted). The most common example of a latent ambiguity is " 'where there are more than one person or thing of the same name or description employed in the instrument.' " Kopf v. Lacey, 208 W.Va. 302, 540 S.E.2d 170, 176 (2000) (quoting Collins v. Treat, 108 W.Va. 443, 152 S.E. 205, 206 (1930)). For example, if a shipping contract containing shipping terms stating goods would arrive on the Peerless, but two ships have that name, the contract contains a latent ambiguity. Black's Law Dictionary 93 (9th ed. 2009).

▆ [¶ 10] In Gawryluk, we rejected the argument that an overconveyance created a latent ambiguity in a deed. 2002 ND 205, ¶ 11, 654 N.W.2d 400; see also Nichols, 2012 ND 178, ¶ 14, 820 N.W.2d 740. An overconveyance occurs when a grantor conveys a greater mineral interest than they actually own. Gawryluk, at ¶ 11. "In cases involving a grantor's overconveyance of minerals to a third-party grantee, this Court has applied the Duhig rule to construe the deed." Nichols, at ¶ 15 (citing Duhig v. Peavy–Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878 (1940)). We explained the rule under Duhig:

> [W]here a grantor conveys land in such a manner as to include 100% of the minerals, and then reserves to himself 50% of the minerals, the reservation is not operative where the grantor owns only 50% of the minerals. The deed is construed as undertaking the transfer of 50% of the minerals to the grantee. Both this grant and the reservation cannot be given effect, so the grantor loses because the risk of title loss is on him.

Nichols, at ¶ 15 (citations omitted). "This Court's application of Duhig has been based on estoppel by warranty, a subset of estoppel by deed, which precludes a war-rantor of title from questioning the title warranted." Gawryluk, at ¶ 14 (citing Miller v. Kloeckner, 1999 ND 190, ¶ 13, 600 N.W.2d 881). "[T]he rationale from Duhig may apply to a deed with no warranty provisions, and the key question is not what the grantor purported to retain for himself, but what the grantor purported to give the grantee." Gawryluk, at ¶ 14.

[¶ 11] In its findings of fact, conclusions of law, and order for judgment, the district court stated "[t]he Goodall Deed while being unambiguous on its face is latently ambiguous when it is read with the entire title chain, and extrinsic evidence is allowed to explain the parties' intent."

[¶ 12] The district court was correct in finding the deed was unambiguous on its face. The face of the deed reflects the Hoffmans did not transfer their entire mineral interest in the 1980 deed. However, the district court erred in finding a latent ambiguity existed using the chain of title as basis for allowing the extrinsic evidence to look for ambiguity. There is no ambiguity created by applying the undivided 508.26/876.26 fractional mineral interest to the ground, regardless of whether it creates an overconveyance. See 26A C.J.S. Deeds § 264 (2011). The contract and receipt are extrinsic evidence that is generally inadmissible without an ambiguity in the deed. This is not an instance involving more than one person or thing of the same name on the instrument. This deed is unambiguous as applied to the ground. The district court erred in finding a latent ambiguity in the deed. However, a district court's decision will not be set aside merely because the court applied an incorrect reason if, under the correct law and reasoning, the result is the same. Syversen v. Hess, 2003 ND 118, ¶ 8, 665 N.W.2d 23. Although the district court erred in finding a latent ambiguity, the district court also

considered the extrinsic evidence to show a mutual mistake was made by the parties.

## III

[¶ 13] The Goodalls argue the district court properly reformed the deed under N.D.C.C. § 32–04–17 because the deed does not truly express the intentions of the parties due to mutual mistake. The Monsons argue the Goodalls have not met their burden of proof to support a claim for reformation. The Monsons also argue the district court erred in finding a mutual mistake based on the evidence presented.

[¶ 14] While the Goodalls did not specifically plead reformation in their complaint, the Monsons have not argued sufficiency of the pleadings. We have held district courts have equitable jurisdiction to provide a remedy where none exists at law, even if the parties have not requested an equitable remedy, whenever the pleadings sufficiently give notice of the party's right to relief and demand for judgment. Harrington v. Harrington, 365 N.W.2d 552, 557 (N.D. 1985) (citations omitted).

[¶ 15] The statutory basis for reformation is provided in section 32–04–17, N.D.C.C.:

When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

The procedure for conducting reformation is well established:

"Reformation is an equitable remedy used to rewrite a contract to accurately reflect the parties' intended agreement." Spitzer v. Bartelson, 2009 ND 179, ¶ 22,

773 N.W.2d 798. This Court has recognized that "equity will grant remedial relief in the nature of reformation of a written instrument, resulting from a mutual mistake, when justice and conscience so dictate." Ell v. Ell, 295 N.W.2d 143, 150 (N.D. 1980). Whether a contract contains a mistake sufficient to support a reformation claim is a question of fact. See Spitzer, at ¶ 23; Heart River Partners v. Goetzfried, 2005 ND 149, ¶ 15, 703 N.W.2d 330.

The party seeking reformation of a written instrument must establish by clear and convincing evidence that the document does not state the parties' intended agreement. Spitzer, 2009 ND 179, ¶ 24, 773 N.W.2d 798; Heart River Partners, 2005 ND 149, ¶ 14, 703 N.W.2d 330. Courts grant the "high remedy of reformation" only upon the "certainty of error." Ell, 295 N.W.2d at 150. We have discussed the type of evidence admissible in deciding whether reformation is appropriate:

"It is well-established that parol evidence is admissible in a suit to reform a written instrument on the grounds of fraud or mutual mistake of the parties." Ell v. Ell, 295 N.W.2d 143, 149 (N.D. 1980). Accord Heart River Partners v. Goetzfried, 2005 ND 149, ¶ 12, 703 N.W.2d 330; City of Fargo v. D.T.L. Properties, Inc., 1997 ND 109, ¶ 12, 564 N.W.2d 274; Mau v. Schwan, 460 N.W.2d 131, 134 (N.D. 1990); Ives v. Hanson, 66 N.W.2d 802, 805 (N.D. 1954). "The nature of [a reformation] action is such that it is outside the field of operation of the parol evidence rule, since the court does not receive parol testimony to vary the contract of the parties but to show what their contract really was." 66 Am.Jur.2d Reformation of Instruments § 114 (2001) (footnotes omitted). If courts refused to admit parol evidence in ref-

ormation cases, the rule would become "an instrument of the very fraud or mistake it was designed to prevent." Ell, at 150.

In reformation actions, courts "can properly look into the surrounding circumstances and take into consideration all facts which disclose the intention of the parties." Id. (emphasis in original). "Any evidence that tends to show the true intention of the parties, whether it be evidence of conduct or declarations of the parties extrinsic to the contract or documentary evidence, is admissible." Heart River Partners, 2005 ND 149, ¶ 14, 703 N.W.2d 330. See also 66 Am.Jur.2d supra § 114 (footnotes omitted) ("Any competent testimony which tends to prove ... the intention of the parties is admissible. A witness in a position to know may testify concerning the intention of the parties to an agreement, to the same effect as to any other fact."). Johnson v. Hovland, 2011 ND 64, ¶¶ 11–12, 795 N.W.2d 294 (quoting Spitzer, at ¶¶ 14–15).

[¶ 16] The district court did not err in considering extrinsic evidence to determine whether there was a mutual mistake. The question remains whether the district court had adequate evidence before it to support reformation of the deed.

[¶ 17] Findings of fact are reviewed under the clearly erroneous standard of review. N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is not evidence to support the finding, or, if there is some evidence to support the finding, based on the entire record, the reviewing court is left with a definite and firm conviction a mistake has been made. Syversen, 2003 ND 118, ¶ 9, 665 N.W.2d 23. Generally, for mutual mistake to justify reformation of a contract, it must be shown at the time the agreement was executed both parties intended to say something different from what was said in the instrument. Melchior v. Lystad, 2010 ND 140, ¶ 10, 786 N.W.2d 8.

The district court's findings to support reformation include:

On May 13, 1980, George W. Hoffman and Dorothy Hoffman, as Sellers, and Francis K. Goodall and Alice Goodall, as Purchasers, executed a Contract and Receipt (the "Contract and Receipt") stating that the Goodalls were purchasing all of the Hoffmans' 508.26 mineral acres in and under:

McKenzie County, North Dakota

Township 152 North—Range 93 West

Section 19: E1/2SW1/4, Lots 3, 4, SE1/4

Section 20: SW1/4, W1/2NW1/4SE1/4

Section 30: E1/2NW1/4, Lots 1, 2, NE1/4, N1/2SE1/4

and further that a mineral deed would be issued by the Hoffmans to the Goodalls. The Contract and Receipt was never placed of record in McKenzie County.

. . .

At the time the Goodall Deed was executed, George W. Hoffman and Dorothy Hoffman owned a total of 508.26 mineral acres in and under the premises described in the Goodall Deed, which amount is the same amount as the numerator in the fractional interest that was used in the Goodall Deed.

. . .

At trial, Plaintiffs called Beverly Kadrmas, a petroleum landman and the Vice President of B.J. Kadrmas, Inc., to testify, and offered her as an expert in the field of mineral title examination.

After reviewing eight conveyances of interests in the mineral estates underlying Tracts 1 through 4, including the Goodall Deed, as well as the Contract and Receipt, Kadrmas concluded that the intent of the Hoffmans in the Goodall Deed was most likely to convey an undivided 508.26 mineral acres out of the 876.26 total mineral acres in Tracts 1–4, rather than to convey a 508.26/876.26 fractional mineral interest in each of the Tracts. Kadrmas affirmed that to reach such a conclusion one would "need to look at the whole title chain" of Tracts 1–4.

The district court concluded that the deed was executed in fulfillment of the contract and receipt, but as a result of a mutual mistake the deed did not express the true intent of the parties.

[¶ 18] The contract and receipt received as evidence contained language to show that the intent of parties to the contract was to transfer "an undivided 508.26 mineral acres" in the real estate later described in the deed. There is no dispute that an undivided 508.26 mineral acres is the amount the sellers owned at the time the deed was executed approximately two weeks later. The Monsons do not argue they are good faith purchasers for value. Because there is clear evidence the Hoffmans intended to transfer 508.26 mineral acres rather than the fractional interest as shown on the deed, the district court's findings are supported by the record and are not clearly erroneous.

## IV

[¶ 19] We conclude the district court did not err in admitting extrinsic evidence to support the Goodalls' argument that a mutual mistake had been made, and the district court's findings supporting reformation of the deed are not clearly erroneous. The district court's judgment granting reformation is affirmed.

[¶ 20] Lisa Fair McEvers

Carol Ronning Kapsner

Dale V. Sandstrom, S.J.

Gerald W. VandeWalle, C.J.

I concur in the result.

Daniel J. Crothers

[¶ 21] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.