2017 ND 174

**Billie DIXON, Trustee of the Shirley A. Dixon Trust, Plaintiff and Appellee**

v.

**John W. DIXON, individually, Defendant and Appellant**

and

**John W. Dixon and Kimberly B. Dixon, as Conservators of the Estate of K.S.D., Defendants**

No. 20160438

Supreme Court of North Dakota.

Filed 7/12/2017

Amy L. De Kok (argued) and Jade B. Jorgenson (on brief), Bismarck, ND, for plaintiff and appellee.

Gregory W. Hennessy, Williston, ND, for defendant and appellant John W. Dixon.

Kapsner, Justice.

[¶ 1] John Dixon appeals from a judgment reforming a warranty deed to except and reserve mineral interests in certain real property from the conveyance and retain the minerals as the property of the Shirley A. Dixon Trust. John Dixon argues the district court erred in reforming the deed because there was no evidence of a mutual mistake and the statute of limitations precluded the reformation claim. We affirm, concluding the district court did not

err in reforming the deed and the statute of limitations argument was waived.

I

[¶ 2] In the 1960s Shirley Dixon purchased a tract of real property in McKenzie County described as:

Township 148 North, Range 98 West

Section 31: Lots 2 and 3, SE1/4NW1/4, NE1/4SW1/4, SE1/4

In 1972, the Shirley A. Dixon Revocable Trust was created. Shirley Dixon's husband, William Dixon, was appointed trustee. The trust agreement stated Shirley Dixon's children, Billie Dixon, John Dixon, Dotti Dixon Schmeling, and Patricia Syminow, would become the remainder beneficiaries of the trust upon her death and the trust property would be allocated equally among the children. The Section 31 property was transferred to the trust.

[¶ 3] In 1996, William Dixon, as trustee, executed a warranty deed conveying the Section 31 property. The deed granted John Dixon a life estate in the Section 31 property, with the remainder interest to John Dixon's surviving children in equal shares, and if John Dixon was not survived by children, the remainder would go to Shirley Dixon's three daughters as joint tenants. The deed stated it excepted and reserved all prior mineral conveyances, reservations and easements of record.

[¶ 4] In 2000, John Dixon's child was born. In December 2000, William Dixon requested John Dixon sign a mineral deed conveying an undivided three-fourths interest in and to the minerals in and under the Section 31 property equally to Billie Dixon, Patricia Syminow, and Dotti Dixon Schmeling. The deed stated, "It is the intent of the Grantors to convey to each of the Grantees an undivided 1/4th interest of the oil and gas minerals that the Grantors presently own on the above described

property." John Dixon executed the requested mineral deed.

[¶ 5] In 2006, Patricia Syminow died. In 2009, William Dixon resigned as trustee and Billie Dixon was appointed successor trustee. William Dixon died in 2010, and Shirley Dixon died in 2015.

[¶ 6] In August 2013, Billie Dixon, as trustee, sued John Dixon, individually, and John Dixon and his wife, as the conservators of their child's estate, seeking injunctive relief, declaratory judgment, and to quiet title, or, alternatively, for reformation of the 1996 warranty deed. She alleged William Dixon intended to reserve the minerals in and under the Section 31 property from the 1996 Warranty Deed and retain the minerals as the property of the trust.

[¶ 7] After a bench trial, the district court found Shirley and William Dixon attempted to treat their children equally with respect to the trust and other property they owned, William Dixon executed the 1996 Warranty Deed conveying the Section 31 property to John Dixon, and Shirley and William Dixon gifted money to their other three children in an amount equal to the value of the surface interest of the Section 31 property. The court found Shirley and William Dixon realized a mistake was made in the 1996 Warranty Deed and they mistakenly conveyed the minerals to John Dixon instead of reserving them from the conveyance to remain in the trust. The Court found Shirley and William Dixon wanted the mineral interests to be split equally among their children and they requested John Dixon sign the 2000 Mineral Deed conveying an undivided three-fourths interest in the minerals in the Section 31 property equally to his three siblings. The court found the 2000 Mineral Deed did not correct the mistake because it only transferred a life estate interest in the minerals to the siblings. The court found the sib-

lings executed mineral leases as if they each owned a one-fourth undivided mineral interest in fee simple, and Billie Dixon and Dotti Dixon Schmeling did not become aware of any problems or concerns with their ownership until 2012 or 2013 when they were contacted by an oil company questioning how the company should disburse royalties. The court found Billie Dixon proved by clear and convincing evidence that a mutual mistake was made in transferring the mineral interests to John Dixon through the 1996 Warranty Deed and the "botched attempt" of the "corrective" 2000 Mineral Deed. The court reformed the 1996 Warranty Deed to reserve and except the minerals and retain the mineral interests as property of the trust to be distributed in accordance with the trust's terms and conditions.

## II

[¶ 8] In an appeal from a bench trial, the district court's factual findings are reviewed under the clearly erroneous standard and its conclusions of law are fully reviewable. *KLE Constr., LLC v. Twalker Dev., LLC*, 2016 ND 229, ¶ 5, 887 N.W.2d 536. A finding is clearly erroneous if there is no evidence to support it, if it is induced by an erroneous view of the law, or if, after reviewing all of the evidence, we are left with a definite and firm conviction a mistake has been made. *Id.* "A court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the court." *Krenz v. XTO Energy, Inc.*, 2017 ND 19, ¶ 18, 890 N.W.2d 222. Whether a contract contains a mistake sufficient to support a claim for reformation is a question of fact. *Freidig v. Weed*, 2015 ND 215, ¶ 13, 868 N.W.2d 546.

## III

[¶ 9] John Dixon argues the district court erred in finding there was a mutual mistake in executing the 1996 Warranty Deed requiring reformation of the deed. He claims William Dixon gifted the Section 31 property to him and money to the other three siblings, which were approximately equal gifts, and there was no mutual mistake.

[¶ 10] Under N.D.C.C. § 32-04-17, a deed may be reformed:

When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

"A party seeking reformation has the burden to prove by clear and convincing evidence that a written agreement does not fully or truly state the agreement the parties intended to make." *Freidig*, 2015 ND 215, ¶ 12, 868 N.W.2d 546.

[¶ 11] Deeds are construed in the same manner as contracts and will be interpreted to give effect to the parties' mutual intention as it existed at the time of contracting. *Freidig*, 2015 ND 215, ¶ 10, 868 N.W.2d 546.

When the language of a deed is plain and unambiguous and the parties' intentions can be ascertained from the writing alone, extrinsic evidence is inadmissible to alter, vary, explain, or change the deed. If a contract is ambiguous, extrinsic evidence may be considered to clarify the parties' intentions. A contract is ambiguous when rational arguments can be made for different interpretations. Whether a contract is ambiguous is a question of law for the court to decide. On appeal, we independently review a contract to determine if it is ambiguous.

*Goodall v. Monson*, 2017 ND 92, ¶ 7, 893 N.W.2d 774 (quoting *Nichols v. Goughnour*, 2012 ND 178, ¶ 12, 820 N.W.2d 740).

[¶ 12] The 1996 Warranty Deed stated William Dixon, as trustee of the Shirley A. Dixon Trust, granted the Section 31 property to John Dixon, "for his lifetime, remainder to John's children in equal shares, as joint tenants, if he is survived by children, and if he is not survived by children, to our three daughters, BILLIE DIXON, DOROTHY SCHMELING and PATRICIA SYMINOW, as joint tenants." It also stated all prior mineral conveyances, reservations, and easements were excepted and reserved. The 2000 Mineral Deed stated John Dixon and his wife "grant, bargain, sell, convey, transfer, assign and deliver unto BILLIE DIXON, ... PATRICIA SYMINOW, ... and DOROTHY DIXON SCHMELING, ... an undivided three-fourths interest in and to all of the oil, gas, casinghead gas, casinghead gasoline, and other minerals in and under and that may be produced from [the Section 31 property]." The deed further provided, "It is the intent of the Grantors to convey to each of the Grantees an undivided 1/4th interest of the oil and gas minerals that the Grantors presently own on the above described property."

[¶ 13] The district court interpreted the deeds and concluded the 1996 Warranty Deed is unambiguous, but stated it was appropriate to consider extrinsic evidence in deciding whether the deed reflected the parties' true intention. The court explained, "The 1996 Warranty Deed while being unambiguous on its face is latently ambiguous when it is read with the 2000 Mineral Deed and Trust Agree-

ment, and extrinsic evidence is allowed to explain the parties' intent."

[¶ 14] Although extrinsic evidence is generally not allowed when the language of a deed is unambiguous, a latent ambiguity may be explained by extrinsic evidence. *Goodall*, 2017 ND 92, ¶ 9, 893 N.W.2d 774. "A latent ambiguity is an uncertainty which does not appear on the face of the deed, but which is shown to exist for the first time by matter outside the writing when an attempt is made to apply the language to the ground." *Id.* An example of a latent ambiguity is "where there are more than one person or thing of the same name or description employed in the instrument." *Id.* (quoting *Kopf v. Lacey*, 208 W.Va. 302, 540 S.E.2d 170, 176 (2000)). We have also explained, "where no ambiguity is apparent to a person perusing the deed until, on obtaining evidence of the circumstances of the parties, it is discovered that there are several persons or things, or classes of persons or things to each of which a name or description contained in the deed seems to be equally applicable. An ambiguity of this class is called a 'latent ambiguity[.]' " *Pamida, Inc. v. Meide*, 526 N.W.2d 487, 491 (N.D. 1995) (quoting *Harney v. Wirtz*, 30 N.D. 292, 306, 152 N.W. 803, 808 (1915)). "When the intention of the parties is clearly expressed, and a doubt exists, not as to the intention, but as to the object to which the intention applies, it is a latent ambiguity." *Gawryluk v. Poynter*, 2002 ND 205, ¶ 10, 654 N.W.2d 400 (quoting *Harney*, at 306, 152 N.W. 803, 808).

[¶ 15] The district court correctly determined the deeds are unambiguous on their face; however, the court erred in finding the deeds are latently ambiguous. There is no ambiguity created by applying the deeds. The 1996 Warranty Deed granted John Dixon a life estate in the Section 31 property and transferred all of the property including the minerals. The 2000 Mineral Deed transferred 3/4ths of the mineral interests which John Dixon had to his three siblings. John Dixon only had a life estate interest in the minerals and could not transfer a fee simple interest in the minerals to his siblings. There is no ambiguity in applying the deeds, and the evidence was offered to explain the parties' intention in conveying the property. The court erred in finding there was a latent ambiguity in either deed.

[¶ 16] Although the court applied an incorrect reason, its decision will not be set aside if, under the correct law and reasoning, the result is the same. *Goodall*, 2017 ND 92, ¶ 12, 893 N.W.2d 774. The court also considered whether there was a mutual mistake. A mutual mistake justifying reformation requires that, at the time of execution of the agreement, both parties intended to say something different from what was said in the document. *Freidig*, 2015 ND 215, ¶ 11, 868 N.W.2d 546. "In considering whether or not a mutual mistake exists, the court can properly look into the surrounding circumstances and take into consideration all facts which disclose the intention of the parties." *Id.* at ¶ 12 (quoting *Ell v. Ell*, 295 N.W.2d 143, 150 (N.D. 1980)). Circumstantial evidence alone may be sufficient to establish grounds for reformation. *Freidig*, at ¶ 12. If a written contract is unambiguous, parol evidence is admissible in an action to reform the contract on the grounds of mutual mistake to establish the alleged mistake and to correct the instrument to conform to the agreement or parties' intent. *Id.* at ¶ 11. "Any evidence that tends to show the true intention of the parties, whether it be evidence of conduct or declarations of the parties extrinsic to the contract or documentary evidence, is admissible." *Goodall*, at ¶ 15 (quoting *Johnson v. Hovland*, 2011 ND 64, ¶ 12, 795 N.W.2d 294). The district

court properly considered extrinsic evidence in deciding whether there was a mutual mistake.

[¶ 17] The district court found Billie Dixon proved by clear and convincing evidence that a mutual mistake was made in transferring the mineral estate to John Dixon in the 1996 Warranty Deed and the attempt to correct the mistake with the 2000 Mineral Deed, which granted only life estates in the minerals to the remaining siblings. The court found evidence established Shirley and William Dixon always made careful efforts to treat their children equally, and they gifted money in an amount equal to the value of the surface interest to the other siblings when they gifted the Section 31 property to John Dixon. The court noted Shirley and William Dixon met with an attorney in November 2000 and the attorney confirmed by letter that the 1996 Warranty Deed was contrary to their desire to have the minerals deeded to all four children in equal shares. The court found the 2000 Mineral Deed served no other purpose than to attempt to correct the mistake made in the execution of the 1996 Warranty Deed.

[¶ 18] John Dixon argues this case is similar to *Mau v. Schwan*, 460 N.W.2d 131 (N.D. 1990), because he was not mistaken and did not know or suspect that William Dixon was mistaken when the 1996 Warranty Deed was executed. He claims the court erred as a matter of law because there must be clear and convincing evidence of a mutual or unilateral mistake with knowledge or suspicion of the mistake by the grantee at the time the deeds were executed.

[¶ 19] In *Mau*, 460 N.W.2d at 132, this Court affirmed the district court's decision denying reformation of a contract and deed related to mineral interests. The grantor's predecessor-in-interest entered into a contract for deed with the grantee for certain property, but excepted and reserved one-half of the minerals in and under the property. *Id.* The grantor's predecessor-in-interest had previously conveyed 90 of the 160 mineral acres and the grantor did not own one-half of the minerals. *Id.* After the final installment in the contract was paid, the grantor executed a warranty deed containing the same reservation language. *Id.* The grantor requested the district court reform the deed, arguing there was a mistake in the deed, the predecessor-in-interest had medical problems and the grantee admitted early awareness about a mistake in the quantity of minerals he actually received. *Id.* at 135. This Court reviewed the district court's finding that there was insufficient evidence of a mistake warranting reformation, and held the finding was not clearly erroneous. *Id.* This Court agreed with the district court's finding that the appellant submitted very little evidence which would tend to show a mistake, the appellant must demonstrate the challenged findings are clearly erroneous, and the district court's finding that there was no mistake justifying reformation was not clearly erroneous. *Id.* at 135-36.

[¶ 20] "Each case involving the reformation of a contract on grounds of fraud or mutual mistake must be determined upon its own particular facts and circumstances." *Mau*, 460 N.W.2d at 134. The facts of this case are different from *Mau*. Furthermore, we are reviewing the district court's finding there was a mistake justifying reformation. "A finding is clearly erroneous only when, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* at 136.

[¶ 21] Evidence in the record supports the district court's finding there was a mutual mistake. The trust agreement states the trust property should be allocated equally among Shirley Dixon's children.

John Dixon testified he believed his parents gifted property equally among their children. Billie Dixon testified William Dixon wanted everything to be equal. The record includes a letter dated November 7, 2000, from an attorney to William and Shirley Dixon stating:

> Although you initially told me you wanted the minerals you own in Sections 6, 8 and 31 deeded to all four children, the deeds to John in 1987, 1990 and 1996 on this property conveyed all of the surface and mineral interests you owned in that property. Minerals transfer with the surface interests on warranty deeds in North Dakota unless the minerals are specifically excepted by name. Since I understood from you yesterday that minerals on that property were not deeded to either of your trusts before these deeds to John were done, John received the surface and mineral interests on that property.
>
> Therefore, the enclosed Mineral Deed to John only covers the property referred to in the Slaaten Olson deeds and oil and gas leases you talked about.

The 2000 Mineral Deed conveys an undivided three-fourths interest in the minerals in the Section 31 property from John Dixon to his three siblings. John Dixon only had a life estate and therefore the 2000 Mineral Deed only conveyed his life estate interest. Both parties claim the life estate holders have limited use of the minerals and do not have a right to royalties from the mineral production, and the remainderman will receive all the royalties. The parties did not raise this issue in the appeal, and we are not deciding whether the life estate holder is entitled to any royalty income. John Dixon testified William Dixon gave him the 2000 Mineral Deed to sign because he had all the mineral interests and William Dixon wanted them to go to all of Shirley Dixon's children. The parties all testified they were not aware the 2000 Mineral Deed only granted them a life estate interest and they believed they each owned a one-forth undivided mineral interest in fee simple. John Dixon testified nobody understood the royalties would all go to the remainderman. The evidence supports the court's findings.

[¶ 22] The evidence established that William and Shirley Dixon attempted to treat their children equally and gift property equally. The 2000 Mineral Deed and November 2000 letter from the attorney are evidence of a mutual mistake in the 1996 Warranty Deed and that the parties did not intend to convey the mineral interests to John Dixon in 1996. Evidence established William and Shirley Dixon wanted the minerals to be allocated equally between their children with the children having fee simple ownership of the minerals. John Dixon could only convey the interest he held in the minerals and the 2000 Mineral Deed only transferred a portion of John Dixon's life estate. The 2000 Mineral Deed did not correct the mistake. Evidence exists showing the parties' intent was to transfer only the surface interest to John Dixon and for the trust to retain the mineral interests to be split evenly among William and Shirley Dixon's children.

[¶ 23] Evidence supports the court's finding that there was a mutual mistake in the 1996 Warranty Deed and the 2000 Mineral Deed attempted and failed to correct the mistake. Although there was also evidence supporting John Dixon's arguments, the district court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Krenz*, 2017 ND 19, ¶ 18, 890 N.W.2d 222. We conclude evidence supports the court's findings and we are not left with a definite and firm conviction a mistake has been

made. The district court's findings are not clearly erroneous.

## IV

[¶ 24] John Dixon argues the district court erred in reforming the deed because the statute of limitations expired. He claims a ten-year statute of limitations applies under N.D.C.C. § 28-01-15(2), and the time began to run in December 2000 when William Dixon discovered he made a mistake and instructed John Dixon to sign the 2000 Mineral Deed. Billie Dixon argues John Dixon waived this issue by failing to raise it before the district court.

[¶ 25] "[W]e do not consider questions that were not presented to the trial court and that are raised for the first time on appeal." *Messer v. Bender*, 1997 ND 103, ¶ 10, 564 N.W.2d 291 (quoting *Eastburn v. B.E.*, 545 N.W.2d 767, 773 (N.D. 1996)). We have explained:

The purpose of an appeal is to review the actions of the trial court, not to grant the appellant an opportunity to develop and expound upon new strategies or theories. The requirement that a party first present an issue to the trial court, as a precondition to raising it on appeal, gives that court a meaningful opportunity to make a correct decision, contributes valuable input to the process, and develops the record for effective review of the decision. It is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. Accordingly, issues or contentions not raised ... in the district court cannot be raised for the first time on appeal.

*KLE*, 2016 ND 229, ¶ 8, 887 N.W.2d 536 (quoting *Paulson v. Paulson*, 2011 ND 159, ¶ 9, 801 N.W.2d 746). The parties must present evidence on the issue upon which the court can make findings and

base its decision. *See State v. Albaugh*, 2007 ND 86, ¶ 17, 732 N.W.2d 712; *Holden v. Holden*, 2007 ND 29, ¶ 12, 728 N.W.2d 312; *In re Estate of Vertin*, 381 N.W.2d 199, 201 (N.D. 1986).

[¶ 26] John Dixon's answer to the complaint states the claim is barred by the applicable statute of limitations. He also referred to the statute of limitations in his post-trial brief, stating, "According to the Statutes of Limitation at §§ 28-01-05 and 28-01-15(2) NDCC and the *Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760 (ND 1996) annotation the equitable remedy of reformation at sub-§ 15(2) is 10 years which means that Billie was 7 years too late to raise that claim." John Dixon did not make any further argument about the issue.

[¶ 27] Under N.D.C.C. § 28-01-15(2), an action upon a contract contained in a conveyance or instrument affecting the title to real property must be commenced within ten years after the claim for relief has accrued. Determining when a cause of action accrues is generally a question of fact. *Frith v. Park Dist. of City of Fargo*, 2016 ND 213, ¶ 11, 886 N.W.2d 836. Although John Dixon raised the issue in his pleadings, he failed to present any evidence or make any argument about the issue during the trial, other than the minimal argument in his post-trial brief. "Judges are not 'obligated to engage in unassisted searches of the record for evidence to support a litigant's position[.]'" *KLE*, 2016 ND 229, ¶ 10, 887 N.W.2d 536 (quoting *State v. Goulet*, 1999 ND 80, ¶ 10, 593 N.W.2d 345). The district court did not make any specific findings about when the claim for relief accrued and the statute of limitations began to run. We are unable to review the issue. We conclude John Dixon did not adequately raise the issue before the district court and it will not be addressed on appeal.

## V

[¶ 28] John Dixon argues the district court erred by holding the trial without joining all materially interested parties. He claims his child, who has an interest in the property, had a court ordered conservator who should have been joined as a party and Billie Dixon was given notice about the change in conservatorship more than a year before the trial.

[¶ 29] At the start of the trial, John Dixon requested dismissal for failure to join an indispensable party under N.D.R.Civ.P. 19, arguing Billie Dixon was aware a conservator had been appointed for the child but the conservator was not served and the child did not have representation in the case. Billie Dixon responded explaining the child's parents were her conservators when the action was brought and the action was brought against the parents individually and as conservators, N.D.R.Civ.P. 19 did not apply, N.D.R.Civ.P. 25 for substitution of parties applied, and the motion was untimely. The district court denied the motion, stating John Dixon was "playing lawyer games," he should have raised the issue before the morning of the trial if he thought it needed to be addressed, the issue was a N.D.R.Civ.P. 25(c) issue, and the issue was not timely raised.

[¶ 30] Rule 25, N.D.R.Civ.P., governs substitution of parties and states, "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, directs the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(4)." N.D.R.Civ.P. 25(c). Rule 25(c), N.D.R.Civ.P., controls when an interest is transferred during the action, and the rule does not require that the parties be substituted after the interest is transferred, the

action may be continued against the original party, and the judgment will be binding on the successor in interest. *N.D. Mineral Interests, Inc. v. Berger*, 509 N.W.2d 251, 254-55 (N.D. 1993).

[¶ 31] The court has discretion in deciding whether to allow substitution, and the court's decision will not be reversed on appeal unless it abused its discretion. *Berger*, 509 N.W.2d at 255. "An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation. . . . Since the matter is discretionary [the court] may refuse substitution if this seems the wisest course." *Id.* (quoting 7C Wright, Miller, & Kane, *Federal Practice and Procedure: Civil 2d*, § 1958, at pp. 555, 557, 560). A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner. *See State v. Yost*, 2014 ND 209, ¶ 9, 855 N.W.2d 829.

[¶ 32] On the morning of the trial, John Dixon moved to dismiss, arguing an indispensable party had not been joined. He claimed a new conservator had been appointed for the child and the conservator was not a party. However, John Dixon was sued in his individual capacity and as the conservator for the child. At the time the suit was brought John Dixon was the child's conservator. Under N.D.R.Civ.P. 25, the action could continue against the original party and the judgment would be binding on the successor in interest. The motion was made the day of the trial and the court explained it was untimely. We conclude the district court did not abuse its discretion.

## VI

[¶ 33] We affirm the judgment.

[¶ 34] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Gerald W. VandeWalle, C.J.