2017 ND 105

**Jennifer OGREN; Lisa Marie Ogren Castle; Eric Marcus Ogren, Plaintiffs and Appellants**

v.

**Marlene SANDAKER; Karen Walden; Marlys Rulon; Defendants and Appellees**

**and**

**Jennie Rae Davis; Joel D. Wagner, as Personal Representative of the Estate of Marilyn C. Wagner; Randy Barkie; Andrew Barkie; Kurt B. Barkie; Patrick Flanigan; Cristina Flanigan; Alfred Barkie; Paulette Barkie; Mary Cook; Marathon Oil Company; Oasis Petroleum North America LLC; and all other person known and unknown having or claiming any right, title, estate or interest in or lien or encumbrance upon the real property described in the complaint, whether as**

heirs, devisees, legatees, or Personal Representatives of the aforementioned parties or as holding any claim adverse to Plaintiffs' ownership or any cloud upon Plaintiffs' title thereto, Defendants

No. 20160279

Supreme Court of North Dakota.

Filed 4/25/2017

Paul Campbell, 51 N. Broadway, Ste. 600, P.O. Box 1287, Fargo, ND 58107, for plaintiffs and appellants.

Thomas E. Kalil, 111 E. Broadway, P.O. Box 1487, Williston, ND 58802–1487, for defendants and appellees.

Crothers, Justice.

[¶ 1] Jennifer Ogren, Lisa Marie Ogren Castle and Eric Marcus Ogren appeal from a summary judgment in favor of Marlene Sandaker, Karen Walden and Marlys Rulon. The Ogrens argue the district court erred by granting summary judgment in favor of Sandaker, Walden and Rulon because the 1958 assignment of royalty granted a fractional royalty and not a fraction of royalty. We affirm.

I

[¶ 2] In 1958 Mike and Lorene Albert conveyed a 1/8th royalty interest to each of Mike Albert's seven siblings. Mike and Lorene Albert retained the mineral interest and a 1/8th royalty interest. Each of Mike Albert's siblings owned a 1/8th royalty interest. The conveying language of the 1958 assignment of royalty states:

"That Mike Albert and Lorene Albert, husband and wife, ... do hereby sell, assign, transfer, convey and set over unto the said assignees, all of their right, title and interest in and to the Seven-eighths (⅞ SHARE) royalty, of all of the oil and of all the gas produced and saved from the hereinafter described lands."

The intent language of the instrument states:

"IT IS THE INTENT OF THE AS-SIGNORS to assign to each of the seven assignees an equal, but undivided, one-seventh division of the seven-eighths share of royalty being assigned herewith so that each assignee receives an undivided one-eighth share of the total royalty."

The instrument further provides: "assignors do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises."

[¶ 3] In 2004 Lorene Albert, as surviving widow of Mike Albert, conveyed to her children, Kathryn Ogren, Karen Walden, Marlene Sandaker and Marlys Albert, her remaining 1/8th royalty interest in the property. Through a series of assignments and corrective assignments, Kathryn Ogren obtained 5/8th of the 7/8th royalty interests from her relatives who received the 1958 assignment. Kathryn Ogren then conveyed the 5/8th royalty interest and her share of the 1/8th royalty interest received from her parents to her children, Erik Marcus Ogren and Lisa Marie Ogren Castle.

[¶ 4] In 2009 Sandaker, Walden and Rulon leased the property to an oil company for a 3/16th royalty interest. In 2011 an attorney prepared a drilling title opinion concluding the 1958 assignment of royalty conveyed a fractional royalty to Mike Albert's seven siblings. A second title opinion in 2012 concluded the 1958 assignment of royalty conveyed a fraction of royalty to Mike Albert's seven siblings.

[¶ 5] In 2013 the Ogrens commenced an action to quiet title to the disputed royalty interests. The parties filed cross-motions

for summary judgment to resolve the interpretation of the 1958 assignment. The district court entered an order and judgment in favor of Sandaker, Walden and Rulon, determining as a matter of law the 1958 assignment conveyed a fraction of royalty. The Ogrens appeal.

## II

[¶ 6] The Ogrens argue the district court erred in granting summary judgment in favor of Sandaker, Walden and Rulon. The Ogrens contend the district court erred in determining the 1958 assignment of royalty conveyed a fraction of royalty as opposed to a fractional royalty. No disputed issues of material fact exist in this case, and the sole question on appeal involves the interpretation of the 1958 assignment of royalty. The parties offer competing interpretations of the conveyed royalty interest.

[¶ 7] This Court's review of summary judgment is well-established:

"Summary judgment under N.D.R.Civ.P. 56(c) is a procedural device for the prompt and expeditious disposition of a lawsuit without a trial 'if either litigant is entitled to judgment as a matter of law and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes will not alter the result.' "

Hallin v. Lyngstad, 2013 ND 168, ¶ 6, 837 N.W.2d 888 (citing Nichols v. Goughnour, 2012 ND 178, ¶ 9, 820 N.W.2d 740). "Whether a district court properly granted summary judgment 'is a question of law that we review de novo on the record.' " Id.

[¶ 8] The 1958 assignment of royalty is a grant. N.D.C.C. § 47–09–05; Corbett v. La Bere, 68 N.W.2d 211, 215 (N.D. 1955). This Court interprets grants in the same manner as we interpret contracts. N.D.C.C. § 47–09–11. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible." N.D.C.C. § 9–07–04. "A contract must be construed as a whole to give effect to each provision if reasonably practicable." Kittleson v. Grynberg Petroleum Co., 2016 ND 44, ¶ 10, 876 N.W.2d 443 (citing N.D.C.C. § 9–07–06). "Whether a contract is ambiguous is a question of law for the court to decide." Rolla v. Tank, 2013 ND 175, ¶ 5, 837 N.W.2d 907 (quoting Nichols v. Goughnour, 2012 ND 178, ¶ 12, 820 N.W.2d 740).

[¶ 9] This Court has not defined the terms "fraction of royalty" and "fractional royalty." However, we noted the difference in language used when conveying royalties leads to a discrepancy in the amount of interest conveyed, stating:

"It should be observed also that a difference exists between a ⅛ royalty and ⅛ of royalty. The former gives the right to one out of every eight barrels of oil produced. The latter usually gives the right to ⅛ of the usual ⅛ royalty, or one out of every 64 barrels of oil produced."

Knox v. Krueger, 145 N.W.2d 904, 908 (N.D. 1966).

[¶ 10] Royalty interests may be conveyed or reserved as a fractional royalty or a fraction of royalty. Hysaw v. Dawkins, 483 S.W.3d 1, 9 (Tex. 2016). A fractional royalty, commonly called a fixed royalty, is conveyed or reserved as a fixed fraction of total production. Id.; 2–3 Williams & Meyers, Oil and Gas Law § 327.1 (2016). A fraction of royalty is commonly called a floating royalty and is conveyed or reserved as a fraction of the total royalty interest. Id.; 2–3 Williams & Meyers, Oil and Gas Law § 327.1 (2016). Because the parties characterize the royalty interest conveyed as either a fractional royalty or a fraction of royalty, this Court

will refer to these terms as characterized by the parties. The Supreme Court of Texas provides us with helpful definitions of each term, stating:

> "A fractional royalty interest conveys a fixed share of production and remains constant regardless of the amount of royalty contained in a subsequently negotiated oil and gas lease. In comparison, a fraction of royalty interest (as a percentage of production) varies in accordance with the size of the landowner's royalty in a mineral lease and is calculated by multiplying the fraction in the royalty reservation by the royalty provided in the lease."

Hysaw v. Dawkins, 483 S.W.3d 1, 9 (Tex. 2016) (internal citations and quotations omitted).

[¶ 11] Examples of language commonly conveying a fractional royalty include:

> "a one-fourth royalty in all oil, gas and other minerals in and under and hereafter produced
>
> "a fee royalty of $\frac{1}{32}$ of the oil and gas
>
> "an undivided one-sixteenth royalty interest of any oil, gas or minerals that may hereafter be produced
>
> "one-half of the one-eighth royalty interest
>
> "an undivided $\frac{1}{24}$ of all the oil, gas and other minerals produced, saved, and made available for market
>
> "1% royalty of all the oil and gas produced and saved"

2–3 Williams & Meyers, Oil and Gas Law § 327.1 (2016). Standing alone, the effect of this language is to create a fraction or fixed percentage of gross production as a freestanding royalty. Id. The royalty interest owner is entitled to a share of gross production that will not fluctuate according to the amount of royalty provided for in a future lease. Id.

[¶ 12] In contrast, language commonly conveying a fraction of royalty includes:

> "$\frac{1}{16}$ of all oil royalty
>
> "The undivided $\frac{2}{3}$ of all royalties
>
> "One-half interest in all royalties received from any oil and gas leases
>
> "An undivided one-half interest in and to all of the royalty
>
> "One-half of one-eighth of the oil, gas and other mineral royalty that may be produced
>
> "one-half of the usual one-eighth royalty."

2–3 Williams & Meyers, Oil and Gas Law § 327.2 (2016). Standing alone, the effect of this language creates "a floating or fraction of royalty and shares in production in the amount of the fraction times the royalty reserved in the lease." Id.

[¶ 13] Here, the conveying language of the 1958 assignment of royalty states:

> "all of their right, title and interest in and to the Seven-eighths ($\frac{7}{8}$ SHARE) royalty, of all of the oil and of all the gas produced and saved from hereinafter described lands."

The intent language of the instrument states:

> "IT IS THE INTENT OF THE ASSIGNORS to assign to each of the seven assignees an equal, but undivided, one-seventh division of the seven-eighths share of royalty being assigned herewith so that each assignee receives an undivided one-eighth share of the total royalty."

The instrument further states: "assignors do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises."

[¶ 14] The Ogrens argue the conveying language of the 1958 instrument is compa-

rable to language interpreted as fractional royalty and thus the district court erred by determining the assignment was a fraction of royalty. Sandaker, Walden and Rulon assert this interpretation is only possible if the Court ignores the language of the assignment regarding future leases.

[¶ 15] The district court determined the 1958 instrument unambiguously conveyed a fraction of royalty, stating: "If there was any question after reading the first part of the deed, those questions are answered in the intent clause at the end. Looking no further than the four corners of the document we know exactly what the grantors were doing."

[¶ 16] The conveying language here is similar to examples of language conveying a fractional royalty. However, ending the analysis at the conveying language would be contrary to this Court's jurisprudence requiring that the instrument be examined as a whole. The language in the intent clause does not contradict the conveying language but explains the royalty interest was to be computed "so that each assignee receives an undivided one-eighth share of the total royalty," not the total production. When construing the instrument consistent with each provision, the intent clause makes clear that Mike and Lorene Albert intended the royalty interest to be shared seven different ways between Mike Albert's siblings as a fraction of the total royalty interest, not a fixed fraction of the total production. Moreover, it is clear Mike and Lorene Albert conveyed the interest subject to future leases. Read as a whole, the 1958 assignment of royalty unambiguously conveyed a fraction of royalty. The district court did not err in ruling the assignment of royalty conveyed a fraction of royalty.

### III

[¶ 17] We affirm the district court's summary judgment.

[¶ 18] Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Jerod E. Tufte

Gerald W. VandeWalle, C.J.