[Cite as *Crum v. Mooney*, 2023-Ohio-4451.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

GARY D. CRUM, ET AL.,

Plaintiffs-Appellees,

v.

AUDREY JOAN MOONEY, ET AL.,

Defendants-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MO 0011**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2019-403

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. David J. Wigham*, *Atty. J. Benjamin Fraifogl* and *Atty. Jeremy D. Martin*, Roetzel & Andress, LPA, for Plaintiffs-Appellees Gary, D. Crum, Jeffrey L. Crum and Roger A. Crum and

*Atty. Craig J. Wilson*, C.J. Wilson Law, LLC, for Defendant-Appellant Appalachia Minerals, LLC and

*Atty. John Kevin West* and *Atty. John C. Ferrell,* Steptoe & Johnson PLLC, for Defendant–Appellee Gulfport Appalachia, LLC.

Dated:  December 6, 2023

**D'APOLITO, P.J.**

{¶1}    Intervening Defendant-Appellant, Appalachia Minerals, LLC ("Appellant") (royalty interest owner) appeals the entry of summary judgment by the Monroe County Court of Common Pleas in favor of Defendant-Appellee Gulfport Appalachia, LLC ("Gulfport")(oil and gas lessor) and Plaintiffs-Appellees, Gary D. Crum, Jeffrey L. Crum, Roger A. Crum ("Crums")(oil and gas lessees), as well as the denial of Appellant's corresponding motion for judgment on the pleadings, in this action to quiet title and for a declaratory judgment applying the Marketable Title Act ("MTA"), and in the alternative, for a determination of royalty interest.

{¶2}    The Crums have not appealed the trial court's conclusion that Appellant's royalty interest was not extinguished by operation of the MTA.  Only the calculation of the royalty interest is before us on appeal.

{¶3}    The trial court concluded that the 1898 assignment of royalties conveyed a fixed, fractional 1/16 royalty interest to Appellant's predecessors-in-interest.  For the following reasons, we agree the assignment conveys a fixed, fractional 1/16 royalty interest and the entry of summary judgment in favor of Appellees is affirmed.

## STANDARD OF REVIEW

{¶4}    This appeal is from a trial court judgment sustaining a motion for summary judgment and overruling a motion for judgment on the pleadings.  An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C).  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Before summary judgment can be granted, the trial court must determine that:  (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party.  *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).  Whether a fact is "material"

Case No. 23 MO 0011

depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶5}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 11.

**{¶6}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

**{¶7}** Courts review the decision to grant a motion for judgment on the pleadings by the same standard used to review the decision on a Civ.R. 12(B) motion to dismiss. *Ohio Pub. Works Commission v. Barnesville*, 7th Dist. Belmont No. 19 BE 0011, 2020-Ohio-4034, ¶ 27, aff'd, 2022-Ohio-4603. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is a procedural motion that tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). In order for a trial court to dismiss the action, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. When making a determination on a Civ.R. 12 (B)(6) motion, a court must accept the facts as alleged within the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). We apply a de novo standard of review to the trial court's determination under Civ.R. 12(B)(6). *Ford v. Baska*, 7th Dist.

Harrison No. 16 HA 0008, 2017-Ohio-4424, ¶ 6 citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

## **FACTS AND PROCEDURAL HISTORY**

**{¶8}** In 1898, a conveyance captioned "Assignment of Royalty" was executed and recorded in the Recorder's Office of Monroe County, Ohio. The assignment reads in pertinent part:

> T.D. Seal and M.E. Seal, his wife, the grantor, have granted and conveyed and do hereby grant and convey unto C.L. Norris and F.L. Mooney, the one-half (1/2) part of his royalty Being 1/16 part of all the oil and gas in and under the following described premises, to wit * * * This grant and the provisions hereof shall apply and extend to the said grantor and grantees their heirs, executors, administrator and assigns. * * *

**{¶9}** The property described in the conveyance is a 40-acre tract of land in Sunsbury Township, Monroe County. The parties agree the Crums own the surface of the property, as well as the exclusive right to lease the oil and gas underlying the property, which they acquired on January 25, 1995. Further, by virtue of a default judgment entered by the trial court, the Crums own all the oil and gas royalties, less the disputed royalty interest originally conveyed to C.L. Norris, which is the subject of this appeal.

**{¶10}** On November 14, 2019, the Crums filed their complaint against eleven individual defendants (purported mineral interest owners) and Gulfport requesting a declaratory judgment that the portion of the royalty interest conveyed to C.L. Norris was extinguished by operation of the MTA and an order quieting title to the same. The Crums sought identical relief with respect to the portion of the royalty interest conveyed to F.L. Mooney.

**{¶11}** On December 30, 2019, Appellant filed a motion to intervene as a defendant, asserting that it had acquired the interest of several purported holders of C.L. Norris's interest. On April 7, 2020, the trial court entered an agreed order granting the motion to intervene, finding Appellant had succeeded to the interest of six of the royalty

interest owners, all of whom claimed an interest in and through C.L. Norris. The trial court ordered Appellant to file a responsive pleading to the complaint within forty-five days.

{¶12} On November 18, 2020, the trial court granted default judgment against four individual defendants identified in the complaint as claiming an interest through F.L. Mooney – Audrey Joan Mooney, Brenda Pollara Black, Donna Lou Porter, and Eleanor Mooney Forrer ("Mooney heirs"). As a result, the Crums are now the record owners of the royalty interest conveyed to F.L. Mooney.

{¶13} The matter was stayed on November 24, 2020, when Gulfport filed for bankruptcy protection.  The stay was lifted on August 30, 2021.

{¶14} On December 16, 2022, Appellant filed a motion for judgment on the pleadings and a motion to vacate the default judgment entered in favor of the non-answering individual defendants.  Appellant asserted the C.L. Norris royalty interest was not extinguished by operation of the MTA, and the royalty interest is an interest in 1/2 of the lease royalty, as opposed to 1/16 of the total production from the property.  Appellant further asserted the default judgment entered against the non-answering individual defendants should be vacated as the MTA claim in the complaint fails as a matter of law.[1]

{¶15} On December 21, 2022, the Crums filed their opposition brief, arguing the royalty interest was a fixed, fractional interest. The Crums further asserted judgment on the pleadings was improper because Appellant failed to file an answer to the complaint.

{¶16}  In response, Appellant filed its motion for leave to file answer instanter. On January 10, 2023, the Crums filed their response to Appellant's motion for leave and a cross-motion for default judgment.

{¶17} On December 22, 2022, Gulfport filed a combined response to Appellant's motion for judgment on the pleadings and a motion for partial summary judgment asserting the royalty interest was not extinguished by operation of the MTA, and the royalty interest was a fixed interest in 1/16 of the production from the property.  Appellant filed its response to Gulfport's motion on January 17, 2023, and Gulfport filed its reply on January 20, 2023. The Crums filed their response to Gulfport's motion on January 18,

---

[1] In *Scarpelli v. Young*, 2019-Ohio-4880, 149 N.E.3d 206 (7th Dist.), we held the trial court did not abuse its discretion in denying a motion for default judgment as moot where the abandonment claim, as asserted in the complaint, did not set forth any set of facts where the minerals could be deemed abandoned. *Id.* at ¶ 35.

2023, and joined in Gulfport's motion as it asserted that the royalty interest was a fixed interest. Gulfport filed its reply on January 25, 2023.

{¶18} On January 30, 2023, the trial court issued a judgment entry granting leave to Appellant to file an answer instanter and denying the Crums' motion for default judgment. Appellant's answer and counterclaim were filed on the docket the same day. In its counterclaim, Appellant sought a declaration that its royalty interest was a "floating one-half royalty interest." The Crums filed their answer to Appellant's counterclaim on February 27, 2023.

{¶19} On March 28, 2023, the trial court issued the judgment entry on appeal. The trial court granted Gulfport's motion for partial summary judgment and denied Appellant's motion for judgment on the pleadings and to vacate the default judgment entered against the non-answering individual defendants. The trial court opined "the unambiguous language of the royalty assignment herein created a fixed 1/16 Royalty Interest under the Lease" and "the Norris Interest was preserved from extinguishment under the MTA."

{¶20} Appellant filed its notice of appeal on April 17, 2023.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN GRANTING APPELLEE-DEFENDANT GULFPORT APPALACHIA, LLC'S MOTION FOR SUMMARY JUDGMENT, AND DENYING APPELLANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, AS TO THE QUANTUM OR SIZE OF THE ROYALTY INTEREST CONVEYED IN THE SUBJECT ROYALTY ASSIGNMENT.**

{¶21} An assignment of a royalty interest is a contract and is subject to the laws governing contracts. *Moore Family Trust v. J.M. Jeffers*, 7th Dist. Monroe No. 22 MO 0013, 2023-Ohio-3653, 23. The construction of a written contract is a matter of law that is reviewed de novo. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. "The purpose of contract construction is to discover and effectuate the intent of the parties." *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996). "If a contract is clear and unambiguous, the court need not concern itself with

rules of construction or go beyond the plain language of the agreement to determine the rights and obligations of the parties." *Moore* at ¶ 23.

{¶22} We described the nature and characteristics of royalty interests in *Buegel v. Amos*, 7th Dist. Monroe No. 577, 1984 WL 7725, as follows:

> "* * * A royalty has been defined as an agreed return paid for oil or gas reduced to possession and taken from the leased premises, and as a share of the profits or proceeds from gas and oil operations. An oil and gas 'royalty' has been described as that fractional interest in the production of oil or gas that was created by the owner of land, either by reservation when the mineral lease was entered into, or by direct grant to a third person. And the word 'royalty' as applied to an existing oil and gas lease has been said to refer to the compensation provided in the lease for the privilege of drilling for, and producing, oil and gas, and is said to consist of a share of the oil and gas produced or the profits therefrom but not to include a perpetual interest in the realty." 38 American Jurisprudence 2d 670, Gas and Oil, Section 189.

> As to the particular royalty in the case sub judice, the following is pertinent:

> "It seems that an interest may very well be designated 'royalty' though not limited to an existing or any particular lease and not embracing title to oil and gas in situ - constituting simply a definite beneficial interest in future production from premises de[s]cribed * * *. Such an interest when entirely unlimited as to time or lease is called perpetual nonparticipating royalty, in case no right to participate in future leases is granted or reserved." Annotation, 4 A.L.R. 2d 505.

> All of the characteristics of a nonparticipating royalty interest (and in this case, perpetual), as set out in *Mounger v. Pittman* (Sup. Ct. Miss., 1959), 108 So. 2d 565, have been met. They are as follows:

"The distinguishing characteristics of a 'non-participating royalty interest' are: (1) Such share of production is not chargeable with any of the costs of discovery and production; (2) the owner has no right to do any act or thing to discover and produce the oil and gas; (3) the owner has no right to grant leases; and (4) the owner has no right to receive bonuses or delay rentals."

*Id.* at *1-2. Succinctly stated, a royalty interest is a right to be compensated for a fractional part of any oil and gas that has been removed from the ground or may be removed in the future, and may be a right associated with existing leases or may be a perpetual right that attaches to future leases as well. *Moore* at ¶ 27.

**{¶23}** There are two recognized methods for describing a non-participating royalty interest ("NPRI"): a fixed, also known as "fractional," interest that does not change from lease to lease; and a floating, also known as "fraction of," interest that varies depending on the amount of the landowner's royalty set forth in each specific lease. Williams & Meyers, Oil and Gas Law § 327.1 (2016); *Hysaw v. Dawkins*, 483 S.W.3d 1 (Tex.2016), 14; see also, *Ogren v. Sandaker*, 2017 ND 105, 893 N.W.2d 750 (N.D.2017), ¶ 10 (containing a detailed description of fixed versus floating royalty interests).

**{¶24}** Disputes over whether a conveyance or reservation reflects a fixed or floating royalty interest are commonplace when a deed or assignment contains multiple fractions. These so-called double-and-restated-fraction cases frequently involve multiples of 1/8, which was the standard royalty provided in mineral leases. *See* generally *West v. Bode*, 7th Dist. Monroe No. 18 MO 0017, 2019-Ohio-4092; *Pfalzgraf v. Miley*, 2018-Ohio-2828, 116 N.E.3d 893 (7th Dist.); *Rochus v. Thompson*, 7th Dist. Noble No. 16 NO 0430, 2017-Ohio-4138.

**{¶25}** The ubiquity of the 1/8 landowner royalty led many landowners to presume the landowner royalty would remain 1/8 in perpetuity. *See Hysaw*, 483 S.W.3d at 10; *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991). The Texas Supreme Court has observed "[t]hough not inexorably so, the reality is that use of 1/8 (or a multiple of 1/8) in some instruments undoubtedly embodies the parties' expectation that a future lease will provide the typical 1/8th landowners' royalty with no intent to convey a fixed fraction of gross production." *Hysaw*, 483 S.W.3d at 10.

{¶26} Earlier this year, in *Moore, supra,* we found the following clause created a 1/2 "floating, fraction of" royalty:

[Grantors] * * * do hereby grant, bargain, sell and convey to the said [Grantees] their heirs and assigns forever *full equal one sixteenth (1/16) of all the petroleum oil and gas in and under the premises hereinafter described*, that may hereafter be produced from said premises, under and by virtue of a certain oil and gas lease entered into the 30 day of November 1894 to one S.D. Griffith or to any other party or partys [sic] to whom said premises may hereafter be leased, for oil and gas purposes * * * *said 1/16 interest being the one half part of the royalty to be set apart to me free of charge* into tanks or pipe lines receiving said oil which is hereby conveyed to the grantee and to be reserved to them in any contract of lease hereinafter to be entered by us or our assigns, heirs, executors or administrators.

(Emphasis added) *Id.* at ¶ 4.

{¶27} We opined:

The first mention of the one-sixteenth fraction clearly refers to the 1894 lease ("full equal one sixteenth (1/16) * * * that may hereafter be produced from said premises, under and by virtue of a certain oil and gas lease entered into the 30 day of November 1894"). The second mention of one-sixteenth, tied to a reference to "one half part," clearly refers to future leases ("said 1/16 interest being the one half part of the royalty * * * in any contract of lease hereinafter to be entered by us"). The only reasonable interpretation giving effect to both the one-sixteenth and "one half part" provisions is to conclude that the 1894 lease withheld a one-eighth royalty and the Royalty Assignment assigned one half of the one-eighth royalty (one-sixteenth). The Royalty Assignment then also assigned one half of the royalty withheld in any future leases (which most typically would be one-eighth royalty). This interpretation of a floating, or variable, one-half royalty

interest with respect to any future leases also resolves a conflict that arises from Appellant's interpretation where a future lease may not reserve a one-eighth royalty. In that instance, the taking of "one half part" of that royalty would not equal one-sixteenth and the second reference in the Royalty Assignment to one-sixteenth would be contradictory or meaningless. "[I]nterpreting the deed to reserve a floating royalty interest harmonizes both clauses of the reservation * * *." *U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, 551 S.W.3d 148 (Tex.2018), 155.

*Id.* at ¶ 41.

**{¶28}** In *U.S. Shale,* a 1951 deed reserved the following royalty interest:

There is reserved and excepted from this conveyance unto the grantors herein, their heirs and assigns, an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals in and under or that may be produced or mined from the above described premises, the same being equal to one-sixteenth (1/16) of the production. This reservation is what is generally [sic] termed a nonparticipating Royalty Reservation * * *

*Id.* at 150.

**{¶29}** The Texas Supreme Court opined that the first percentage, the one-half (1/2) interest, "clearly indicates that the parties intended to reserve an amount that would 'float' with the governing lease." The Court reasoned the percentage of production will necessarily change based upon the royalty in effect at any given time, because the second clause simply describes the effect of the first. The Court concluded:

As such, both clauses are given effect regardless of the terms of any applicable lease agreement. By contrast, if the Bryan successors are entitled to only a fixed 1/16 of production, the statement in the deed purporting to reserve a 1/2 interest in and to the royalty is no longer true when the royalty deviates from 1/8.

*Id.* at 154.

**{¶30}** The Supreme Court of Texas provided the following grammatical analysis:

The sentence's grammatical structure further bolsters our interpretation. We note that "the same being equal to one-sixteenth (1/16) of the production" is offset by a comma, indicating a nonrestrictive dependent clause. Such a clause "gives additional description or information that is incidental to the central meaning of the sentence" and "that could be taken out of the sentence without changing its essential meaning." BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE § 1.6(a), at 6 (3d ed. 2013); accord BRYAN A. GARNER, THE ELEMENTS OF LEGAL STYLE 140–41 (1991). The court of appeals' emphasis on this clause improperly makes it essential to the sentence rather than incidental. To be clear, we do not imply that the use of a single comma is the dispositive consideration here. We simply recognize that the sentence's grammatical structure is consistent with the interpretation that gives effect to all of its parts.

*Id.* at 154.

**{¶31}** With the foregoing case law in mind, the 1898 document, captioned "Assignment of Royalty," reads in pertinent part:

T.D. Seal and M.E. Seal, his wife, the grantor, have granted and conveyed and do hereby grant and convey unto C.L. Norris and F.L. Mooney, the one-half (1/2) part of his royalty Being 1/16 part of all the oil and gas in and under the following described premises, to wit * * * This grant and the provisions hereof shall apply and extend to the said grantor and grantees their heirs, executors, administrator and assigns. * * *

**{¶32}** Although the 1898 document does not refer to an existing oil and gas lease on the property, the grantor conveys "the one-half (1/2) part of his royalty Being 1/16 part of the oil and gas in and under the * * * premises." The Texas Supreme Court confronted a similar circumstance in *U.S. Shale*, writing, "the record contains evidence that a lease

was in effect when the deed was executed. The parties could not have intended to tie the reservation to something that simply did not exist." *Id.* at 153.

**{¶33}** The trial court found that the 1898 document conveys a fixed, fractional 1/16 interest. Appellant argues that a floating, fraction of 1/2 interest in the royalties was conveyed therein.

**{¶34}** In this appeal, the grantor conveys "the one-half (1/2) part of *his* royalty Being 1/16 part of all the oil and gas in and under the following described premises." (Emphasis added.) The granting language clearly conveys one-half of the grantor's royalty interest. Consequently, the sole question presented in this appeal is whether the 1/16 clause refers solely to the then-existing oil and gas lease, or was intended to govern all future leases.

**{¶35}** The starting premise in all contractual interpretation is that "the court examines the contract as a whole and presumes that the intent of the parties is reflected in the language used in the agreement." *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 22. Courts will attempt to give effect to every provision of the contract, and an interpretation that will give a clause meaning (rather than rendering it contradictory or meaningless) will always be sought if possible. *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 54.

**{¶36}** Appellees argue "[t]he word 'his' fixes the calculation of the royalty at a specific point in time – the time of assignment – and demonstrates that the parties intended the royalty interest to be tied to the standard royalty rate at the time of assignment." (Appellees' Brf., p. 9.) Appellees further argue "[t]he second clause reinforces this intent by further defining the interest as "[b]eing 1/16 part of all the oil and gas underlying the [Property.]" (*Id.*) Finally, Appellee argues the royalty amount was fixed at the time of the assignment because there is no reference to any future oil and gas leases as there was in the Moore conveyance.

**{¶37}** Although not argued by Appellees, the Court in *U.S. Shale, supra,* predicated its conclusion that the deed conveyed a floating, fraction of royalty interest based on its conclusion that the "1/16" reference was contained in a clause subordinate to the "1/2" reference. Here, the "1/16" reference appears in a separate sentence – or at

least it appears so based on the capitalization of the "Being," despite the absence of a period at the apparent end of the prior sentence.

**{¶38}** Appellant, on the other hand, argues that the "1/2" clause would be superfluous if the assignor intended to assign a flat 1/16 royalty interest. Appellant further argues, to give meaning to both fractions, we must interpret the "1/16" clause to refer to the amount of the royalty interest at the time of the assignment, with the 1/2 fraction referring to future leases.

**{¶39}** We find the royalty interest conveyed is a fixed fractional interest. Appellees correctly argue the parties to the assignment used closed rather than open-ended terms, that is, the grantor conveyed "the one half part of his [rather than 'any' or 'the'] royalty interest." Further, although the royalty interest passes to the grantee's heirs and assigns, there is no mention of a current oil and gas lease or a reference to future oil and gas leases on the property. Next, "Being 1/16 part of all the oil and gas in and under the following described premises * * *" is not a subordinate clause, but instead a separate sentence in the granting clause to be given equal weight with the previous sentence. Finally, contrary to Appellant's argument, the two fractions can be harmonized without stripping the 1/2 fraction of any meaning.

**{¶40}** For the foregoing reasons, we find that Appellant's sole assignment of error has no merit. We further find the assignment of royalty conveyed a fixed fractional 1/16 interest and the judgment entry of the trial court is affirmed.


Waite, J., concurs.

Robb, J., concurs.


Case No. 23 MO 0011

———————————

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**